IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HARVEY COLVIN, | HONORABLE JEROME B. SIMANDLE |
| Petitioner, | |
| | Civil Action |
| v. | No. 13-2740 (JBS) |
| CUNNINGHAM, et al., | |
| Respondents. | **OPINION** |

APPEARANCES:

HARVEY COLVIN, Petitioner pro se
510432B/267027
Northern State Prison
168 Frontage Road
Newark, New Jersey 07102

CHRISTOPHER C. JOSEPHSON, Deputy Attorney General.
Office the Attorney General for the State of New Jersey
R.J. Hughes Justice Complex
PO Box 112
Trenton, New Jersey 08625
Attorney for Respondent Cunningham

**SIMANDLE, Chief Judge:**

## I.   INTRODUCTION

Harvey Colvin, a state prisoner confined at Northern State Prison, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 arguing the decision of the New Jersey State Parole Board ("Parole Board" or "Board") to impose a 120-month future eligibility term ("FET") violates the *Ex Post Facto* Clause. Petition, Docket Entry 1. Respondent Cunningham

opposes the petition. Answer, Docket Entry 8. Petitioner did not submit a traverse. For the reasons stated herein, the petition shall be denied and no certificate of appealability shall issue.

## II.  BACKGROUND

The facts underlying Petitioner's conviction were recounted in the Superior Court, Appellate Division, and this Court, affording the state court's factual determinations the appropriate deference, 28 U.S.C. § 2254(e)(1), reproduces the recitation of the facts as set forth by the New Jersey Superior Court Appellate Division in its opinion affirming the Parole Board's decision to impose a 120-month FET:

> The conviction for which Colvin is serving a sentence of fifty years imprisonment arose from the killing of his pregnant girlfriend in 1993. Colvin was living with a different woman and their child at the same time that he was dating the victim. When the victim told Colvin she was pregnant with his child, he became upset and wanted her to get an abortion. She refused. They argued while Colvin was driving her car and, according to police investigative reports, he struck her in the head with a blunt object and pushed her out of the car. He then drove the car over her and dragged her some fifty feet underneath the car before it came to a stop.
>
> After the victim was killed, Colvin enlisted the help of a friend to bury her body in a secluded place. The friend participated in the plan for a while but then had misgivings and went to the police two days later. Colvin had paid the friend $100 to conceal the crime, but the friend revealed Colvin's involvement to the police. When Colvin was interviewed by the police, he gave a false statement, which included a false alibi. He had also paid another person to lie to the police to support his alibi.

> After being charged, Colvin claimed that the victim died
> after he accidentally backed over her following an
> argument. His version was contradicted by physical
> evidence, including front-end damage to the car and
> blood stains on the front bumper.

*Colvin v. N.J. State Parole Bd.*, No. A-5278-10, slip op. at 2-3
(N.J. Super. Ct. App. Div. Aug. 20, 2012); Respondent's Exhibit
D, Docket Entry 8-6.

A Cumberland County Grand Jury indicted Petitioner for
purposeful murder, N.J. STAT. ANN. § 2C:11-3(a)(1) (Count One);
kidnapping, N.J. STAT. ANN. § 2C:13-1(b) (Count Two); felony
murder, N.J. STAT. ANN. § 2C:11-3(a)(3) (Count Three); witness
tampering, N.J. STAT. ANN. § 2C:28-5(a) (Count Four) and;
hindering apprehension, N.J. STAT. ANN. § 2C:29-3(b)(1), (Count
Five). Judgment of Conviction, Respondent's Exhibit B Part 1,
Docket Entry 8-3 at 35. Petitioner entered into a plea agreement
with the State, pleading guilty to a reduced charge of
manslaughter on Count One, as well as Counts Four and Five. *Id.*
He also pled guilty to a separate accusation charging him with
hindering prosecution, N.J. STAT. ANN. § 2C:29-3(b)(4); and
compounding, N.J. STAT. ANN. § 2C:29-4. *Id.* at 38. On December 22,
1994, the trial court sentenced Petitioner to an aggregate term
of 50 years, with 15 years of parole ineligibility. *Id.*

Petitioner was evaluated for parole in 2008; however, "[a]
two-member panel of the Parole Board denied Colvin's first
opportunity for parole on May 12, 2008, and the panel set an FET

3

of thirty-six months." *Colvin*, No. A-5278-10, slip op. at 3.
After serving approximately 16 years and 10 months of his
sentence, Petitioner became eligible for parole again in 2010.
Exhibit B Part 1 at 83. Two members of the Parole Board
evaluated Petitioner and denied his release on parole. *Id.* at
84. The members found that there was "a substantial likelihood
that [he] would commit a new crime if [he were] released on
parole at this time." *Id.* They noted Petitioner was incarcerated
for several crimes; he had numerous, serious institutional
infractions resulting in administrative segregation conviction,
the most recent being June 15, 2009; he had failed to address
his substance abuse problem; and that he continued to minimize
his actions leading to the charges. *Id.* Petitioner's case was
referred to a three-member panel "for the establishment of a
FET" as the possible "[t]erm may be in excess of administrative
guidelines." *Id.* at 85.

Petitioner submitted a request for reconsideration of the
panel's decision on May 25, 2010. *Id.* at 86-92. He objected to
the characterization of his remarks at his hearing and the
validity of the June 2009 institutional infraction, which he had
appeared to the Appellate Division.[1] *Id.* at 86-90. He also argued

---

[1] The Appellate Division later affirmed the charge. *Colvin v.
N.J. Dep't of Corr.*, No. A-5878-08, 2010 WL 3933213 (N.J. Super.
Ct. App. Div. Sept. 24, 2010).

the panel had not sufficiently considered mitigating evidence regarding his substance abuse and rehabilitative counseling. *Id.* at 90-92. On June 8, 2010, the director of the Parole Board's Legal Support Unit wrote to Petitioner to inform him that the administrative code no longer provided for reconsideration of determinations and that he would have to appeal the recommendation to the full Board. Respondent's Exhibit B Part 2, Docket Entry 8-4 at 24.[2]

On July 14, 2010, Petitioner received a document from the three-member panel titled "Notice of Decision." *Id.* at 28.  The notice informed Petitioner that the three-member panel had set a 120-month FET as "[t]he Panel has determined a substantial likelihood exists that you would commit a new crime if released on parole at this time." *Id.* Several items were checked off under the "Reasons for Denial" portion of the form. *Id.* A letter to Petitioner indicated that a more detailed explanation of the reasoning would be forwarded to Petitioner "upon completion." *Id.* at 29. Petitioner received this statement on December 8, 2010. Petitioner's Appendix ("PA") at 6.

On January 18, 2010, New Jersey passed an amendment to the statute governing the scheduling of FETs, N.J. STAT. ANN. § 30:4-123.56. Act of Jan. 18, 2010, c. 330, § 6, eff. Aug. 1 2010

---

[2] The full Board upheld the two-member panel's decision to deny parole on September 29, 2010. Exhibit B Part 2 at 30.

("2010 amendment"). Beginning August 1, 2010, "in no case shall any parole eligibility date scheduled pursuant to this subsection be more than three years following the date on which an inmate was denied release." *Id.* Petitioner filed an administrative appeal to the full Parole Board on January 6, 2011, arguing that "because the Legislature amended N.J.S.A. 30:4-123.56a and b. effective August 1, 2010, that upon a denial of parole, the FET shall be no more than three years. Colvin must have the retroactive benefit of it and have his 120 month FET reduced to no more than three years as the amendment is ameliorative or curative." Exhibit B Part 2 at 51. He later requested to amend his appeal to include the argument that "[b]ecause the decision of the three-member panel was not handed down until December 8, 2010, that, in the interest of fairness, I should have the benefit of the amended statute . . . which limits the establishment of a FET to no more than three years." PA at 17.

In May 2011, the statute was amended again to remove the prohibitions on FETs longer than three years, effective immediately. Act of May 9, 2011, c. 67, § 1, eff. May 9, 2011 ("2011 amendment"). On May 25, 2011, the full Parole Board affirmed the decisions of the two- and three-member panels to deny parole and establish a 120-month FET, respectively. Respondent's Exhibit B Part 3, Docket Entry 8-5 at 46. The full

6

Board concluded that "the [2010] amendment to N.J.S.A. 30:4-
123.56 applies only to those cases in which parole is denied on
or after August 1, 2010." *Id.* at 49.

Petitioner appealed as of right to the Appellate Division.
He argued the 2011 amendment applied to his case as "[t]he new
law became effective on August 1, 2010, two months prior to the
Board Panel's written decision in the instant matter."
Petitioner's Appellate Brief, Respondent's Exhibit A, Docket
Entry 8-2 at 18. In his reply brief, he argued 120-month FET
violated the Ex Post Facto Clause as it was "a pure application
of the 2011 amendment. It holds that although the 2010 amendment
to the legislation was repealed and replaced with the 2011
version, however, current legislative approaches to parole as
should be applied in this case [sic], is for no more than a
three-year FET." Petitioner's Reply Brief, Respondent's Exhibit
C, Docket Entry 8-6 at 7. "The limit of ten years can and should
only apply to those cases coming after May 9, 2011." *Id.*

The Appellate Division concluded the 2010 amendment did not
apply to Petitioner as "the three-member panel issued its notice
of decision setting the 120-month FET on July 14, 2010, before
the effective date of the repealed statutory amendment. The
December 8, 2010 written decision of the panel was a
supplementary explanation of the reasoning for the earlier
decision." *Colvin v. N.J. State Parole Bd.*, No. A-5278-10, slip

7

op. at 7 (N.J. Super. Ct. App. Div. Aug. 20, 2012). It rejected the *ex post facto* argument as "[c]hanges in the frequency of parole hearings during a term of imprisonment do not violate constitutional ex post facto clauses." *Id.* (citing *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 511–13 (1995)). The New Jersey Supreme Court denied certification on January 24, 2013. *Colvin v. N.J. State Parole Bd.*, 59 A.3d 601 (N.J. 2013).

This timely petition under 28 U.S.C. § 2254 followed on April 3, 2013. By order dated January 16, 2014, this Court advised Petitioner of his rights under *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), and directed Petitioner to inform the Court within 45 days as to whether he wanted to proceed with his petition as filed, or withdraw it and file one all-inclusive § 2254 petition subject to the one-year statute of limitations. *Mason* Order, Docket Entry 2. Petitioner did not respond to the *Mason* Order; therefore, the Court ordered Respondent to answer on May 12, 2014. After two extensions of time, Respondent filed its answer on July 25, 2014. Answer, Docket Entry 8. Petitioner did not file a traverse.

## III. STANDARD OF REVIEW

Title 28 U.S.C. § 2254 permits a federal court to entertain a petition for writ of habeas custody on behalf of a person in state custody pursuant to the judgment of a state court, "only on the ground that he is in custody in violation of the

8

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits by a state court, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[A] state-court decision is an unreasonable application of clearly established [Supreme Court] precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S. Ct. 1697, 1706, *reh'g denied*, 134 S. Ct. 2835 (2014). The Court must presume that the state court's factual findings are correct unless Petitioner has rebutted the

9

presumption by clear and convincing evidence. 28 U.S.C. §
2254(e)(1).

**IV. ANALYSIS**

Petitioner raises one ground for relief in his petition:
"Inasmuch as Respondent NJSPB did not provide Petitioner with
its statement of evidence relied on, i.e., specific reasons for
imposing the 120 month FET, until December 8, 2010, the ex post
facto laws were violated because N.J.S.A. 30:4-123.56(a)(b) were
amended, L. 2009, c. 330, § 6, and became effective August 1,
2010 through May 9, 2011, which limited all FETs to be no more
than 3 years." Petition ¶ 12(a).

**A. Ex Post Facto Clause**

"The States are prohibited from enacting an *ex post facto*
law. One function of the *Ex Post Facto* Clause is to bar
enactments which, by retroactive operation, increase the
punishment for a crime after its commission. Retroactive changes
in laws governing parole of prisoners, in some instances, may be
violative of this precept." *Garner v. Jones*, 529 U.S. 244, 249-
50 (2000) (citing U.S. CONST., Art. I, § 10, cl. 1; *Lynce v.
Mathis*, 519 U.S. 433, 445-446 (1997); *Collins v. Youngblood*, 497
U.S. 37, 42 (1990)). However, the *Ex Post Facto* Clause does not
forbid all legislative changes that have "any conceivable risk
of affecting a prisoner's punishment." *Cal. Dep't of Corr. v.
Morales*, 514 U.S. 499, 508 (1995). "[T]he *Ex Post Facto Clause*

10

should not be employed for 'the micromanagement of an endless array of legislative adjustments to parole and sentencing procedures.' . . . The States must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." *Garner*, 529 U.S. at 252 (quoting *Morales*, 514 U.S. at 508).

The Appellate Division concluded Petitioner's *ex post facto* argument failed as "[c]hanges in the frequency of parole hearings during a term of imprisonment do not violate constitutional *ex post facto* clauses." *Colvin v. N.J. State Parole Bd.*, No. A-5278-10, slip op. at 7 (N.J. Super. Ct. App. Div. Aug. 20, 2012) (citing *Morales*, 514 U.S. at 511-13). The standard for *ex post facto* violations is more nuanced than the Appellate Division's statement, however.

*Morales* did not hold that changes to the frequency of parole eligibility hearings could never form the basis of an *ex post facto* challenge; rather, "[t]he controlling inquiry . . . was whether retroactive application of the change in . . . law created 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Garner*, 529 U.S. at 250 (quoting *Morales*, 514 U.S. at 509). In order to demonstrate an *ex post facto* violation, petitioners "must show *both* a retroactive change in law or policy *and* that this change caused individual disadvantage by creating 'a significant risk of

11

increasing his punishment.'" *Richardson v. Pa. Bd. of Prob. & Parole*, 423 F.3d 282, 284 (3d Cir. 2005) (emphasis in original) (quoting *Garner*, 529 U.S. at 255); *see also Benchoff v. Yale*, 620 F. App'x 114, 116 (3d Cir. 2015) (noting the change in the law or policy must create a "'sufficient risk of increasing the measure of punishment attached to the covered crimes'; a 'speculative and attenuated possibility of ... increasing the measure of punishment' is not enough." (quoting *Richardson*, 423 F.3d at 287–88)). *But see Brown v. Williamson*, 314 F. App'x 492, 497 (3d Cir. 2009) ("The constitutional relevance of the frequency of rehearings is questionable given *Morales* and *Garner* . . . .").

That being said, the Court finds after reviewing the state court record that the Appellate Division's decision is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent as it is not "substantially different from the relevant [Supreme Court] precedent" or an "objectively unreasonable" application of Supreme Court precedent. *See White v. Woodall*, 134 S. Ct. 1697, 1702 (2014); *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Petitioner has not shown that he was subjected to a retroactive change in the law; therefore, his *ex post facto* claim fails.

At the time of Petitioner's plea and sentencing, there were no limitations on the length of FETs. Parole Act of 1979, L.

12

1979, c. 441, § 12(a)-(b), eff. Apr. 21, 1980. The statute prohibiting FETs longer than 36 months did not go effect until August 1, 2010, Act of Jan. 18, 2009, c. 330, § 6, eff. Aug. 1, 2010, by which time the three-member panel had already informed Petitioner of its decision to set the FET at 120 months, Exhibit B Part 2 at 28. The short-lived amendment was repealed on May 9, 2011, removing the prohibition on FETs longer than 36 months effective immediately. Act of May 9, 2011, c. 67, §§ 1, 3, eff. May 9, 2011. The full Parole Board upheld the 120-month FET on May 25, 2011, after the amendment had been repealed. Respondent's Exhibit B Part 3 at 46.

Petitioner bases his *ex post facto* argument on the fact that the three-member panel issued its detailed statement of reasons on December 8, 2010, falling within the short period of time in which the 2010 amendment was effective. He asserts the "adjudication was not complete and satisfied until Petitioner was afforded the statement of evidence relied on." Petition at 23. The Appellate Division found that the relevant date was the date on which the three-member panel issued its Notice of Decision, July 14, 2010, as that was the date Petitioner was informed that his FET had been set at 120 months for essentially the same reasons for which the two-member panel had denied parole in the first place. *Colvin v. N.J. State Parole Bd.*, No. A-5278-10, slip op. at 7 (N.J. Super. Ct. App. Div. Aug. 20,

2012). *See also* Exhibit B Part 1 at 84-85; Exhibit B Part 2 at
28-29. It further concluded December 8, 2010 written decision
was only "a supplementary explanation of the reasoning for the
earlier decision." *Colvin*, No. A-5278-10, slip op. at 7. This is
not an unreasonable finding in light of the record below and
relevant federal law.

"There is no right under the Federal Constitution to be
conditionally released before the expiration of a valid
sentence, and the States are under no duty to offer parole to
their prisoners." *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011).
"When, however, a State creates a liberty interest, the Due
Process Clause requires fair procedures for its vindication —
and federal courts will review the application of those
constitutionally required procedures. In the context of parole,
we have held that the procedures required are minimal." *Id.*  In
*Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*,
the Supreme Court held that the Due Process Clause requires
inmates to be "afford[ed] an opportunity to be heard, and when
parole is denied [the Parole Board must] inform[] the inmate in
what respects he falls short of qualifying for parole; this
affords the process that is due under these circumstances. The
Constitution does not require more." 442 U.S. 1, 16 (1979).

Petitioner was heard by the two- and three-member panels of
the Parole Board, and the three-member panel informed Petitioner

14

on July 14, 2010 why a 120-month FET had been set. *See* Exhibit B
Part 2 at 28. At the time of the three-member panel's decision,
the relevant state administrative code provision required the
panel to consider 23 factors when determining if a FET should
exceed the presumptive terms. *See* N.J. Admin. Code 10A:71-
3.21(a), (c)-(d); N.J. Admin. Code 10A:71-3.11, as amended by 37
N.J. Reg. 1191(b) (Apr. 18, 2005). These factors included, but
were not limited to: the "facts and circumstances of the
offense"; the "commission of serious disciplinary infractions";
statements by the inmate and institutional staff "reflecting on
the likelihood that [the inmate] . . . will commit another
crime; the failure to cooperate in his . . . own rehabilitation;
or the reasonable expectation that he . . . will violate
conditions of parole"; and, "[p]articipation in institutional
programs which could have led to the improvement of problems
diagnosed at admission or during incarceration." N.J. Admin.
Code § 10A:71-3.11, as amended by 37 N.J. Reg. 1191(b) (Apr. 18,
2005). These are the same factors marked on the Notice of
Decision that Petitioner received on July 14, 2010. Exhibit B
Part 2 at 28.

Contrary to Petitioner's argument, a "statement of
evidence" is not required under the Due Process Clause, as "[t]o
require the parole authority to provide a summary of the
evidence would tend to convert the process into an adversary

15

proceeding and to equate the Board's parole-release determination with a guilt determination." *Greenholtz*, 442 U.S. at 15-16. Petitioner had an opportunity to present his arguments to the Board, and it informed him on July 14, 2010 that the FET had been set at 120 months and the reasons for that decision. That is "the beginning and the end of the federal habeas courts' inquiry into whether [Petitioner] received due process." *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011).

In light of the applicable Due Process standard and the state court record, Petitioner has not shown that the Appellate Division's determination that the relevant date was July 14, 2010 is incorrect by clear and convincing evidence.[3] *See* 28 U.S.C. § 2254(e)(1). From there, it follows that the 2011 amendment was not retroactively applied to Petitioner as the 2010 amendment never applied to Petitioner in the first instance. The 2010 statute clearly indicated it was to apply to FET decisions made after August 1, 2010. Act of Jan. 18, 2010, c. 330, §§ 6, eff. Aug. 1, 2010. In his appeal to the full Parole Board, Petitioner did not argue that the December 8, 2010 "Statement of Evidence" meant that his proceedings were covered

---

[3] Petitioner cites to two unpublished, non-precedential Appellate Division cases in which the 2010 amendment was applied to other inmates. The fact that other panels of the Appellate Division reached a different decision in those cases on different facts does not mean its decision in Petitioner's case is contrary to, or an unreasonable application of, federal law.

by the 2010 amendment. Instead, he argued he "must receive the retroactive application" of the 2010 amendment as a matter of equity,[4] Exhibit B Part 2 at 88, and amended his appeal to argue "in the interest of fairness, I should have the benefit of the amended statute . . . which limits the establishment of a FET to no more than three years." PA at 17.

By arguing for the retroactive application of the 2010 amendment, Petitioner implicitly conceded that it did not apply to his proceedings on its face. As the amended statute never applied to Petitioner in the first place, the repealing of the law cannot be said to "retroactively alter . . . the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). The Appellate Division's decision is therefore not contrary to, nor an unreasonable application of, Supreme Court precedent, and Petitioner's *ex post facto* argument fails.

## B. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by

---

[4] Petitioner did raise an *ex post facto* challenge to the Parole Board, but it did not concern the 2011 amendment as that legislation had not yet been passed by the Legislature.

demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right. As jurists of reason could not disagree with this Court's resolution of his claims, the Court shall deny Petitioner a certificate of appealability.

## V.    CONCLUSION

For the reasons stated above, the habeas petition is denied. A certificate of appealability shall not issue. An accompanying Order will be entered.

<u>June 23, 2016</u>                    <u>s/ Jerome B. Simandle      `</u>
                                        JEROME B. SIMANDLE
                                        Chief U.S. District Judge